IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


DOROTHY M. CHILDRESS                                                              PLAINTIFF


v.                              NO. 3:19-cv-00023 PSH


ANDREW SAUL, Commissioner of                                                      DEFENDANT
the Social Security Administration


## MEMORANDUM OPINION AND ORDER

Plaintiff Dorothy M. Childress ("Childress") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, Childress challenged the final decision of the Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ").

Childress maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Childress so maintains for the following three reasons: (1) the ALJ failed to consider Childress' chronic lower extremity edema in assessing her residual functional capacity, (2) the ALJ failed to give good reasons for discounting the medical opinions of Childress' treating physician, and (3) the ALJ failed to evaluate the severity of Childress' symptoms in accordance with Social Security Ruling 16-3p.

---

[1]  The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

Childress has not summarized the approximately nine hundred pages of medical evidence in the record. Instead, for the sake of "brevity and to reduce redundancy," she has set forth the relevant medical evidence only "as it applies to errors cited on appeal for review." See Docket Entry 14 at CM/ECF 4.

Childress was born on July 25, 1974, and was forty years old on February 6, 2015, the day she allegedly became disabled. She filed her applications for disability insurance benefits and supplemental security income payments in October of 2016 and alleged that she was unable to work as a result of, inter alia, impairments affecting her knees and lower extremities.

Childress first maintains that her chronic lower extremity edema was not considered in assessing her residual functional capacity. In support of her assertion, she maintains that she suffers from edema or swelling in her lower extremities, and her condition has only minimally improved despite "numerous unsuccessful steroid injections," "weekly physical therapy," and the use of prescription diuretics. See Docket Entry 14 at CM/ECF 7.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all the relevant evidence in the record, "including medical records, observations of treating physicians and others, and [the] claimant's own description of [her] limitations." See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The claimant bears the burden of establishing her residual functional capacity. See Despain v. Berryhill, 926 F.3d 1024 (8th Cir. 2019).

The ALJ observed that Childress' allegations include "swelling in her lower extremities," which Childress maintains "restrict[s] virtually all physical activity." See Transcript at 17. He also observed that her allegations include having to "elevate her legs throughout the day to alleviate swelling," and she develops hip pain "after sitting two hours." See Transcript at 17. At step three of the sequential evaluation process, he found that her severe impairments include degenerative joint disease of the bilateral knees, bursitis of the left hip, and obesity. The ALJ then assessed Childress' residual functional capacity and found that she is capable of performing sedentary work except that she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and requires a sit/stand option hourly for position change.

The question for the ALJ was not whether Childress suffers from edema in her lower extremities.[2] The question was the extent to which the edema impacts the most she can do despite her limitations. Although his consideration of her edema and the work-related limitations it causes was not exhaustive, it was adequate and is supported by substantial evidence on the record as a whole.

The ALJ began his assessment of Childress' residual functional capacity by observing that her allegations include "swelling in her lower extremities" and the need to "elevate her legs throughout the day to alleviate swelling." See Transcript at 17. There is nothing to suggest that he did not consider these allegations in making the assessment, particularly since he found that her ability to perform sedentary work is limited and requires, inter alia, a sit/stand option hourly for position change.

---

[2] It is undisputed that Childress suffers from Grade 4 cartilage loss in her knees, has received steroid injections, has undergone some physical therapy, has some swelling in her lower extremities, and has been prescribed diuretics.

3

Notwithstanding the foregoing, there is little evidence that Childress' edema impacts the most she can do despite her limitations to a degree greater than that found by the ALJ. The Court so finds for the following reasons.

First, Childress completed a series of reports in connection with her applications. In the reports, she made no mention of any difficulties sitting or of a need to elevate her legs while sitting. See Transcript at 414, 416, 421, 440. Although her failure to note any difficulties sitting, or a need to elevate her legs while sitting, is not outcome determinative, it is one factor that could be, and was, considered in assessing her residual functional capacity.

Second, there is no question that Childress experiences edema in her lower extremities as the medical evidence is replete with such observations. The evidence, though, is not compelling. On numerous occasions, she was observed to be experiencing edema, but no assessment was made of its severity. See Transcript at 700, 842, 866, 868, 871, 931, 1108, 1228. When an assessment was made, its severity was typically characterized as "slight" or "mild." See Transcript at 708, 800, 832, 835, 838.

Third, the record reflects that Childress is approximately sixty-seven inches tall and has weighed as much as 360 pounds. Although she represents that she gained the weight primarily because of her steroid use, the record reflects that she has struggled with her weight for years and concedes that it is her "biggest obstacle." See Transcript at 414. On several occasions, she was encouraged to begin or otherwise maintain a regular exercise program. See Transcript at 806, 807, 835, 1042, 1046. Although it is possible that the recommendation is mere verbiage, or standard language, in a progress note, such a recommendation casts some doubt on the severity of her edema.

Fourth, the record reflects that Dr. Kyle Blickenstaff, M.D., ("Blickenstaff") diagnosed Childress with "[o]steoarthritis of both knees" and "[m]orbid obesity due to excess calories." See Transcript at 997. He discussed with her the "absolute need" to lose a significant amount of weight and recommended, inter alia, that she rest her extremities. See Transcript at 997. There is no indication, though, that the recommendation to "rest her extremities" was to be a permanent part of her daily functioning. Instead, the recommendation can be interpreted to be simply a short-term aid in relieving her discomfort.

Last, Dr. Mary Anderson, M.D., ("Anderson"), a physician with ARcare ("ARcare"), opined in a February 5, 2018, To Whom It May Concern letter that Childress suffers from "pain not well controlled with pain medication which makes it difficult for her to stand, walk, sit, etc. for any length of time ..." See Transcript at 1295. The ALJ could and did, though, discount the opinion and accord it less than controlling weight.

Childress maintains that the case at bar is indistinguishable from Smith v. Commissioner, 738 Fed.Appx. 889 (8th Cir. 2018). In that case, Smith testified that if she sat for "any length of time," she began to experience swelling and retaining fluid. See Id. at 890. She took Lasix to reduce the swelling and "elevate[d] her legs at night and several times during the day for 15 to 20 minutes, or longer if she is able." See Id. On at least two occasions, her dosage of Lasix was increased. The ALJ found that Smith could perform a reduced range of sedentary work and was therefore not disabled. The Court of Appeals reversed and remanded the decision because the ALJ made "no effort to investigate Smith's edema" and failed to give "consideration to what effect [it] ... might have on her ability to work." See Id. at 892.

The case at bar is distinguishable from Smith v. Commissioner in at least two respects. First, although the ALJ's consideration of Childress' edema, and her need to elevate her legs throughout the day to alleviate swelling, was not exhaustive, he appears to have considered those matters in assessing her residual functional capacity. Second, with respect to the severity of Childress' edema, the evidence is capable of more than one acceptable characterization, and it is possible to find that her edema is less severe than that experienced by Smith.

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, "[a] reviewing court may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision." See Id. [internal quotations and citations omitted]. Here, the evidence is capable of more than one acceptable characterization. Although the Court might have decided this case differently, the ALJ could find as he did with respect to the limitations caused by Childress' edema.

Childress next maintains that the ALJ failed to give good reasons for discounting Anderson's medical opinions. Childress maintains that the opinions are supported by the record, and "[t]he assertion that [her] symptoms are manageable by conservative treatment is a misnomer," see Docket Entry 14 at CM/ECF 10. Moreover, Childress maintains that "[r]emarkably, despite discrediting … Anderson's opinion based on minimal objective findings, the ALJ's decision acknowledges many of the … abnormalities" noted by Anderson. See Docket Entry 14 at CM/ECF 11.

6

As a part of assessing the claimant's residual functional capacity, the ALJ is required to consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006). A treating physician's opinions may be discounted, though, if other medical assessments are supported by better or more thorough medical evidence or she renders inconsistent opinions that undermine the credibility of her opinions. See Id. "[W]hether the ALJ grants a treating physician's opinion[s] substantial or little weight, the regulations ... provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) [quoting 20 C.F.R. 404. 1527(d)(2)].

Childress saw Anderson for a number of impairments, impairments that impact Childress' ability to perform work-related activities. In the February 5, 2018, To Whom It May Concern letter, Anderson opined the following with respect to Childress' ability to perform those activities:

> I am the primary care physician for ... Childress. [She] is under my care for hip pain, knee pain, hypertension, arthritis, migraine headaches, chronic depression and medication management. Due to the amount of health issues and medications needed to treat these health issues, [she] is, in my opinion, disabled. She suffers from pain not well controlled with pain medication which makes it difficult for her to stand, walk, sit, etc. for any length of time or lift heavy objects repetitively.

See Transcript at 1295.

As a part of assessing Childress' residual functional capacity, the ALJ weighed the medical opinions offered by Anderson in her February 5, 2018, letter. The ALJ gave the opinions little weight for reasons that include the following:

> ... Dr. Anderson's opinion[s] [are] inconsistent with evidence that [Childress'] medications do help control her symptoms, and with objective medical findings of normal range of motion in [her] lower extremities, joint stability, normal reflexes, normal motor functioning, normal sensation, and medical management of her hypertension ... It also is inconsistent with evidence that [her] symptoms are manageable with conservative treatment such as weight loss, a low sodium diet, physical therapy, and medication ...

See Transcript at 19.

The aforementioned reasons are supported by substantial evidence on the record as a whole and are good reasons for giving Anderson's medical opinions little weight. The Court so finds for the following reasons.

First, Childress was seen for her hip and knee pain by Anderson on a number of occasions between November of 2015 and November of 2017. See Transcript at 808 (11/04/2015); 804 (02/24/2016); 804 (03/14/2016); 1009 (04/20/2017); 1004 (07/12/2017); 1004 (08/22/2017); 1002 (09/09/2017); 1047 (09/19/2017); 1002 (11/06/2017); 1000, 1051 (11/28/2017).[3] Anderson's progress notes reflect that Childress was in need of a knee replacement, complained of hip pain while sitting, and reported hydrocodone did not "touch the pain." See Transcript at 1051. Anderson's specific findings and observations, though, are minimal and provide little insight into how she came to hold the opinions she offered in her To Whom It May Concern letter.

---

[3] Because Childress did not summarize the medical evidence, it is difficult to know exactly how many times she saw Anderson.

Second, Childress was also seen for her hip and knee pain by APRNs at ARcare on several occasions between February of 2016 and November of 2017. See Transcript at 806 (02/11/2016); 802 (09/08/2016); 799, 830 (11/07/2016); 833, 837 (01/10/2017); 850 (03/09/2017); 1007 (05/23/2017); 1005 (06/27/2017). They too noted her "long standing left knee pain," see Transcript at 807, and her need for "bilateral knee replacements, see Transcript at 850. Their specific findings and observations, though, are also minimal and inconsistent. Although the APRNs repeatedly noted her complaints of bilateral knee pain with range of motion, one APRN observed that Childress' "chronic pain [was] controlled with current [medication] regimen." See Transcript at 1005. Moreover, Childress was even encouraged to attempt an exercise regimen.

Third, Childress was seen by Dr. Jeffrey Angel, M.D., ("Angel") on at least two occasions for complaints of knee pain. See Transcript at 843, 846. Childress reported that her pain was exacerbated by "stooping or squatting, walking up/down stairs, and walking more than half a block." See Transcript at 843. She was found to have a full range of motion in her right knee with crepitance throughout and tenderness around her patella. In her left knee, she was found to have a full range of motion with pain and tenderness around her patella and medial joint line. Angel diagnosed degenerative joint disease with a left medial meniscus tear and chondromalacia patella. He recommended, inter alia, exercise to strengthen her quadriceps and improve her range of motion, and they discussed her need to lose weight. It is possible to construe Angel's findings, observations, and recommendations in such a manner as to be inconsistent with Anderson's opinion that Childress cannot perform even a reduced range of sedentary work, and the ALJ apparently construed them in that manner.

9

Fourth, Childress was also seen by Blickenstaff on April 25, 2017, for complaints of knee pain. See Transcript at 994. He examined her knees, and his findings and observations include the following:

> No localized swelling of the right knee.
>
> No localized swelling of the left knee.
>
> The anterior aspect of the right knee was tender on palpation and patellofemoral region. The anterior aspect of the left knee was tender on palpation and patellofemoral region.
>
> Right knee pain was elicited by extension. Left knee pain was elicited by extension.
>
> The right knee showed full range of motion.
>
> The left knee showed full range of motion.
>
> Limping was noted on the right, on the left, an antalgic gait was observed on the right side, and on the left side.

See Transcript at 996. An MRI scan of Childress' right knee showed a Grade 4 chondromalacia patellofemoral joint and lateral compartment. An MRI scan of her left knee showed a Grade 4 chondromalacia patellofemoral joint and possible small medial meniscus tear. Osteoarthritis of both knees and morbid obesity due to excess calories were diagnosed. Blickenstaff and Childress discussed her need to lose weight, and he recommended that she rest her extremities; use non-steroidal, anti-inflammatory medications; and begin home exercises and physical therapy. It is possible to construe Blickenstaff's findings, observations, and recommendations in such a manner as to be inconsistent with Anderson's opinion that Childress cannot perform even a reduced range of sedentary work, and the ALJ apparently construed them in that manner.

Last, Childress was also seen by Dr. Meraj Siddiqui, M.D., ("Siddiqui") on December 13, 2017, for complaints that included hip and bilateral knee pain. See Transcript at 1289. Childress reported that her pain was exacerbated by "standing, walking, getting up from sitting or lying position[s], cold weather, pressure changes, and increased activity" but relieved by "stop[p]ing activities that aggravates pain, rest, and taking medicine." See Transcript at 1289. As a part of a physical examination, he observed that she was 67.50 inches tall and weighed 355 pounds. His assessment included bursitis of the left hip, bilateral knee pain, arthritis, and enthesopathy. He recommended, inter alia, a steroid injection for her left hip, a "bilateral genicular knee nerve block injection," a low calorie diet, and regular exercise. It is possible to construe Siddiqui's findings, observations, and recommendations in such a manner as to be inconsistent with Anderson's opinion that Childress cannot perform even a reduced range of sedentary work, and the ALJ apparently construed them in that manner.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995) [internal quotation omitted]. The manner in which an ALJ resolves a conflict will be disturbed only if it falls outside the "available zone of choice." See Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) [internal quotation omitted]. A decision is not outside the "available zone of choice" simply because the court may have reached a different conclusion had it been the finder of fact. See Id. Here, the ALJ's decision to discount Anderson's medical opinions was not outside the "available zone of choice."[4]

---

[4] Childress faults the ALJ for discrediting Anderson's medical opinions while crediting some of the abnormalities she noted. The Court does not share Childress' concern about the treatment of Anderson's findings, observations, and recommendations.

11

Childress last maintains that the severity of her symptoms were not evaluated in accordance with Social Security Ruling 16-3p. Specifically, she maintains the following: "[a]lthough the ALJ cited the language of … 16-3p within the decision and acknowledged Childress' allegation of needing to keep her legs elevated during the day to alleviate swelling …, there is no indication within the decision why the ALJ disregarded this allegation." See Docket Entry 14 at CM/ECF 13.

As a part of assessing the claimant's residual functional capacity, the ALJ is required to evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. See Social Security Ruling 16-3p. In evaluating the intensity, persistence, and limiting effects of the claimant's pain or other symptoms, the ALJ must consider all the evidence, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms …; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p.[5]

---

[5] The Ruling eliminated the use of the word "credibility" in making disability determinations and requires the ALJ to consider several factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. The factors are similar to those identified in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

The ALJ noted Childress' allegations with respect to her symptoms and limitations, including her allegation that she must elevate her legs throughout the day to alleviate swelling. He applied Social Security Ruling 16-3p and found that although her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record.

Although the ALJ's evaluation of Childress' symptoms and limitations was certainly not comprehensive, it was adequate and is supported by substantial evidence on the record as a whole. The Court so finds for the following reasons.

First, the ALJ could and did find that Childress has medically determinable impairments that could reasonably be expected to produce pain. Specifically, he could and did find that her degenerative joint disease of the bilateral knees and bursitis of the left hip could reasonably be expected to produce pain.

Second, the ALJ adequately evaluated the evidence relevant to the intensity, persistence, and limiting effects of Childress' impairments. The ALJ did so by evaluating the medical evidence. Although Childress experiences edema in her lower extremities, the severity of the edema was typically characterized as "slight" or "mild." The findings and observations made by Anderson and the APRNs at ARcare are minimal and provide little insight into the intensity, persistence, and limiting effects of Childress' pain. The findings and observations made by Angel, Blickenstaff, and Siddiqui are more substantial, but their findings and observations are capable of more than one acceptable characterization. Last, the ALJ noted Childress' allegation that she must elevate her legs but could decline to give the allegation substantial weight.

13

The ALJ also adequately evaluated the non-medical evidence. The ALJ could and did properly note that in completing a series of reports, Childress made no mention of any difficulties sitting or of a need to elevate her legs while sitting. He also recounted her daily activities and considered her use of medication and the treatment, other than medication, she has received for her pain. For instance, she has received steroid injections in her left hip and in her knees, but the results she obtained were not satisfactory. In addition, Childress takes, or has taken, hydrocodone for her pain, albeit with minimal satisfactory results.

The question for the ALJ was not whether Childress has pain caused by hip or knee impairments but the extent to which they impact the most she can do. He incorporated limitations for the impairment into the assessment of her residual functional capacity but not to the extent she believes is warranted. The ALJ could find as he did, though, because substantial evidence on the record as a whole supports his evaluation of the evidence.

The governing standard, i.e., substantial evidence on the record as a whole, allows for the possibility of drawing two inconsistent conclusions. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). The ALJ crafted an assessment of Childress' residual functional capacity that limited her to a reduced range of sedentary work. Childress has not shown how the ALJ erred in doing so. In short, the ALJ could find as he did.

Given the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Childress' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 26th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE